ERVIN, Chief Justice.
We have for review by way of writ of certiorari an order of the Florida Industrial Commission bearing date March 28, 1968.
The question presented for our consideration on review of this cause is whether the employee/claimant has sufficiently demonstrated a change of condition so as to sustain a petition for modification pursuant to F.S. Section 440.28, F.S.A.
Claimant, who is fifty-one years old, was first injured in a compensable accident on April 15, 1959 as a result of a fall while she was employed as a waitress. Her injury was diagnosed as a fracture of the distal end of the radius of the left wrist. On June 13, 1961 a hearing was held before Deputy Commissioner Anderson, who found that claimant had sustained minimal residual orthopedic disability of her hand and that she suffered from a conversion reaction or post-traumatic neurosis which was causally related to her industrial accident. Considering the hand injury as well as the psycho-neurotic problem, the Deputy found that claimant had sustained a ten per cent permanent partial disability of the *834 body as a whole, for which compensation benefits were accordingly awarded. No review was sought from this order and it became final.
On June 27, 1963 claimant filed a petition for modification of the prior order and a claim for additional medical benefits. Hearings held January 13, 1964 and March 30, 1964 finally culminated in an order entered by Deputy Commissioner Daniel (who succeeded Deputy Commissioner Anderson) on June 14, 1967 finding that the uncontradicted lay and medical evidence showed clearly that claimant’s compensable injuries had worsened and that claimant had suffered a marked change in condition. Deputy Daniel found that claimant was totally disabled at the time of hearing on March 30, 1964 and had been so disabled continually since April 17, 1962.
On review the Commission, with one of its three members dissenting, concluded that the evidence relied on by Deputy Commissioner Daniel was merely cumulative and a re-analysis of the same evidence presented before Deputy Commissioner Anderson and that claimant’s psychosomatic problem had not changed, since rendition of the order sought to be modified.
In reaching its conclusion, we find the Commission has narrowly construed “change of condition” as a ground for the allowance of a petition for modification under F.S. Section 440.28, F.S.A., and has attempted to reweigh the testimony and substitute its evaluation and opinion of the evidence for that of the Judge of Industrial Claims. This action of the Commission is contra our decisions in Hastings v. City of Fort Lauderdale (1965), 178 So.2d 106, and Crowell v. Messana Contractors (1965), 180 So.2d 329.
.At the outset, it should be noted that the original order in this cause found claimant had sustained a ten per cent permanent partial disability to the body as a whole which was primarily attributable to a conversion reaction or post-traumatic neurosis causally related to claimant’s industrial accident. It seems clear that the original order affirmatively concluded the existence of a causal connection between claimant’s psychiatric disorder and the industrial accident and that the single question controlling disposition of the petition for modification is simply whether there is competent substantial evidence indicating a worsening of claimant’s psychiatric condition.
In Sauder v. Coast Cities Coaches, Inc. (Fla.1963), 156 So.2d 162, 165, this Court commented on the change of condition provision in F.S. Section 440.28, F.S.A. as follows:
“ * * * In the modification proceeding there was medical testimony which, if believed, would support a finding that the claimant’s condition had substantially changed. The so-called change of condition provision is available to bring relief to a claimant whose condition becomes progressively worse even though not anticipated by the original diagnosis. A change also may be the product of evi-dentiary factors not known at the time of the initial claim proceeding. The burden remains with the claimant to establish by competent substantial evidence the occurrence of the change or deterioration in his condition, and with reasonable medical certainty, the period during which his condition progressively worsened. * h= ”
The evidentiary record discloses that the claimant was admitted to Tampa General Hospital on April 17, 1962 and received psychiatric treatment and evaluation there until April 30, 1962. In August, 1962 the claimant underwent medical and psychiatric evaluation at the Mayo Clinic. On May 9, 1963 she was admitted to St. Anthony’s Hospital, where she remained until May 19, 1963. In August, 1963 she was examined by Dr. Melvyn J. Gardner, a psychiatrist in Tampa, who saw her on three occasions. Thereafter, psychiatric care was undertaken by Dr. Walter Bailey, a St. Petersburg psychiatrist, who on October 3, 1963 arranged the first two of three admissions of claimant to the Mound Park Hos *835 pital during the remainder of 1963. During the second of these admissions, in November, claimant’s case was transferred to another psychiatrist, Dr. Herbert E. Rubin, who was the attending physician at the time of the hearings before Deputy Commissioner Daniel. Claimant was transferred from Mound Park Hospital to a nursing home, Palms of Pasadena, and later transferred from that institution to the Fairview Nursing Home, where she resided at the time of the hearing before Deputy Commissioner Daniel.
Dr. Gardner, the psychiatrist who examined claimant in August, 1963, some two years after the original order, stated in a deposition taken January 6, 1964 that claimant was suffering from a conversion reaction and that her original conversion symptoms were becoming more widespread and diffuse. Dr. Gardner stated that as far as he could determine claimant’s symptoms had gradually worsened from the time of her accident until the time he had seen her and that in his opinion her symptoms will become more severe until a point where she may very readily become bedfast. He testified specifically that claimant’s conversion reaction is chronic and severe; that she is decompensating more and more; that as time has passed her condition has gradually worsened and her ability to handle anxieties arising from the accident and injections of cortisone in treating her has become progressively more difficult. He states that when her symptoms are worse she would be called a schizophrenic. He sees no prospect of improvement in her condition, stating: “It is progessively downhill.” Dr. Gardner further stated that based on his examination he was of the opinion claimant is one hundred per cent totally disabled.
Dr. Herbert Rubin, the second psychiatrist who testified before the Deputy, stated he had prescribed nursing home care and that the claimant was still in need of this care. He stated he had to prescribe potent drugs in order to get her over the emotional disturbances and aggravations of her symptoms.
We find from the expert testimony in the record that the claimant’s psychiatric condition, which stemmed from her original injury, has deteriorated and worsened, becoming chronic and severe, with her original symptoms becoming more widespread and diffused; and that she is totally disabled as a result of traumatic neurosis.
Since on several occasions we have sustained a change of condition based on medical testimony demonstrating a deterioration of a claimant’s physical condition, we see no good reason for failure to apply the same rule when the condition with which we are concerned is of a psychiatric or psychological nature as opposed to one that is physiological.
Neither the members of the Commission nor any of us on the Court are experts in the healing arts; not being such, we are precluded from manifesting in our decisions latent native skepticism of un-contradicted findings of medical experts— even those in the psychiatric field. In the decisional process relating to workmen’s compensation, there is no warrant for judicial preferences for either claimants or carriers, through substitution of our non-professsional notions for expert medical findings. At this level we have long been committed to the rule of acceptance of the findings of the Judges of Industrial Claims (formerly Deputy Commissioners) based on competent substantial evidence that is in accord with logic and reason. And this last limiting phrase does not operate to permit us to substitute our nonprofessional notions relative mental and nervous disorders in lieu of recognized opinion testimony of experts in the healing arts which has been accepted by the Judge of Industrial Claims.
Since the expert evidence of claimant’s greatly worsened psychiatric condition is uncontradicted and we are re *836 strained by our precedents from substituting our lay views therefor, we quash the order of the Commission and reinstate the order of Deputy Commissioner Daniel, except to' the extent that his order is disagreed to by the dissent of Commissioner Lightsey, which dissent we find correct and reduces, in part the Deputy’s allowance to claimant of certain medical and nursing home expense. It is directed that an order of the full Commission be entered in accordance with our opinion and judgment.
DREW and THORNAL, JJ., and SPECTOR, District Court Judge, concur.
ROBERTS and CALDWELL (retired), JJ., dissent.